Deborah COMPTON, Appellant,

v.

Meriam CALABRIA and J.L.
Huffines, Appellees.

No. 05–90–00988–CV.

Court of Appeals of Texas,
Dallas.

May 13, 1991.

Rehearing Denied June 17, 1991.

Gary D. Jackson and Gloria A. Jackson, Jackson, Jackson, Loving & Kindred, Dallas, for appellant.

Christopher Stokes, Newman & Davenport, P.C., David C. Kent and Mary Ann Joerres, Hughes & Luce, Dallas, for appellees.

Before ROWE, LAGARDE and OVARD, JJ.

## OPINION

ROWE, Justice.

This appeal arises from a take nothing partial summary judgment granted in favor of Meriam Calabria and J.L. Huffines with respect to Deborah Compton's malicious prosecution and civil conspiracy claims against them. Asserting four points of error, Compton exhorts us to correct trial court error by reversing the judgment. We do so and remand the cause for trial on the merits.

The following events establish the relevant procedural history of this case: In June 1987, Compton sued Calabria for breach of a condominium remodeling/renovation contract. Calabria counterclaimed for breach of contract, negligence, fraud, and deceptive trade practices. Also in June 1987, the Dallas County Grand Jury indicted Compton for theft arising out of her conduct in performing the contract. The criminal case was tried in January 1989, at which time Compton was acquitted.

Immediately after her acquittal, Compton amended her petition in the civil suit against Calabria to add counts for malicious prosecution and civil conspiracy. She also added Huffines as an additional party defendant on those counts. Calabria and Huffines each filed a motion for summary

judgment based, *inter alia,* on the fact that each had probable cause to complain to the district attorney. The trial court denied these motions. Subsequently, Calabria and Huffines jointly filed a renewed motion for summary judgment and supplemented their summary judgment evidence already on file. Compton then filed a cross-motion for summary judgment. The trial court granted Calabria and Huffines's joint motion for summary judgment and granted Compton's motion to sever, thereby making the malicious prosecution and conspiracy aspects of the underlying lawsuit ripe for appeal.

The following facts are relevant to this appeal: In August 1986, Compton entered into a $187,000 contract with Calabria to extensively remodel and renovate Calabria's condominium. Huffines, a friend and advisor of Calabria, executed the written contract on Calabria's behalf. The contract called for Calabria to pay Compton the $187,000 on a draw schedule based upon the completion of certain percentages of the work.

By the beginning of November 1986, a dispute had arisen between Calabria and Compton as to how much work Compton had completed and how much money she had spent in connection with the remodeling project. This dispute resulted in the payment schedule being rearranged by agreement so that Compton would have to complete four specific items of work in the condominium in order to receive the next payment, the "third draw payment." The parties disagree, however, as to whether they orally agreed that Compton would bring Calabria invoices for items that she had already ordered and paid for with respect to the project. Calabria and Huffines claim that the presentment of the receipts was a condition precedent to the $14,400 third draw payment. Compton denies this, urging that the third draw payment was only conditioned upon her completing the four items listed in the amended contract.

Calabria had become suspicious of Compton's representations that work had been done and goods and appliances purchased because she could not verify that the work had in fact been done and that the goods and appliances had in fact been ordered and paid for. On December 1, 1986, Calabria, Huffines, and Compton met to consider Compton's progress on the project and Compton's demand for more money. According to Calabria and Huffines, in order to induce payment from Calabria, Compton presented them with two invoices from Bergeron's TV, Appliance & Video store, which purported to represent that Compton had paid for several items that were intended to be installed in Calabria's condominium. Both invoices were later proved to be forged. Calabria contends that, based upon these invoices, she issued Compton a check for $14,400. Compton, on the other hand, admits that she forged the Bergeron invoices, but she denies that she gave them to Calabria on December 1, 1986, in order to induce Calabria to pay her the third draw payment. Compton claims that she gave Calabria the invoices on December 31, well after she had received the third draw, in response to a subsequent request from Calabria for them. Compton maintains that the $14,400 check was delivered as a progress payment due under the amended agreement, not for the items listed on the Bergeron invoices.

According to Calabria and Huffines, after the $14,400 payment was made, they continued to question whether Compton was actually doing work and paying subcontractors. While making inquires, Huffines discovered for the first time that the Bergeron invoices in fact were false in that many of the items listed had not been paid for or even ordered. About the same time, Huffines demanded that Compton turn over an accounting of her expenditures, but Compton refused to do so. Fearing that Compton was defrauding her, Calabria discussed the matter with her attorney, J. Harris Morgan. Her attorney believed that the matter should be directed to the attention of the Dallas County District Attorney's office.

On February 16, 1987, attorney Morgan accompanied Calabria and Huffines to the

District Attorney's office. At the District Attorney's office, they spoke with Gerald Mann, an assistant district attorney responsible for criminal case intake. Calabria and Huffines told Mann about the problems, delays, and disputes relating to Compton's performance and lack of performance, including their belief that Compton had submitted false invoices to Calabria. More specifically, Calabria stated, "I fully disclosed to Assistant D.A. Gerald Mann all of the facts and circumstances relating to the forged Bergeron invoices and additionally how I had been induced to pay Compton $14,400 based upon her tendering to me those forged invoices." Mann requested that Calabria and Huffines obtain an affidavit from Bergeron evidencing the false invoices. Pursuant to that request, on February 23, 1987, attorney Morgan met with Robert Bergeron, Jr. and obtained an affidavit. Morgan forwarded Bergeron's affidavit to Mann. Robert Bergeron, Jr. swore to the fact that the Bergeron invoices presented by Compton to Calabria were indeed false, that Compton had not paid for many of the items presented by the invoices, and that Compton had later asked him to lie about these facts, which he refused to do.

Importantly, whereas Calabria had told Mann that Compton had presented the fraudulent invoices on December 1, 1986, Bergeron's affidavit stated that Compton did not pick up the blank invoices until about December 31, 1986. This conclusion was based upon company records of the use-date of surrounding invoices. Some months after receiving the Bergeron affidavit, Mann accepted the case and prepared a handwritten case summary dated May 11, 1987. The case summary was prepared to be submitted to the grand jury for its consideration. In reviewing the Bergeron affidavit, Mann noted that although Calabria and Huffines had indicated that Compton delivered the invoices on December 1, 1986, Bergeron believed that the invoices were picked up by Compton about December 31, 1986. Mann noted the variance in the dates by marking on the typewritten copy

of the affidavit attached to the case summary, "Affiant is confused on dates." Mann explained that he noted the variance in dates in order to call the grand jury's attention to it.

Mann determined that there was probable cause to initiate a criminal proceeding against Compton and recommended in mid-May 1987 that the matter be submitted to the grand jury for indictment on the charge of felony theft relating to the invoices. Mann believed that "Ms. Compton was guilty of a crime, a more serious crime than what we filed." He was concerned, however, that it would be too difficult, time-consuming, and expensive to ferret out all of Compton's wrongdoings. Mann stated:

> There is just too much. The grand jury would never be able to—without weeks and weeks and months of analysis and study on the part of an accounting firm, which we couldn't employ and I am sure Ms. Calabria didn't feel like they could either. So I felt like that this was a case that the grand jury could easily understand. There wasn't any question in my mind that there had been a violation of law and the theft of $7,000 worth of property.

Thus, it was Mann, not Calabria or Huffines, who made the decision to base the official complaint on the invoices rather than on some of the other aspects of the transaction.

The grand jury indicted Compton on a charge of felony theft in June 1987, specifying the date of the theft as December 1, 1986. This criminal case was tried in January 1989. Compton argued at trial that she presented the fraudulent invoices to Calabria on December 31, 1986, whereas the indictment said she did so on December 1, 1986. The jury acquitted Compton of the felony theft charge. Immediately after her acquittal, Compton amended her pending lawsuit against Calabria and added Huffines as a defendant under malicious prosecution and conspiracy causes. This appeal involves a summary judgment subsequent-

ly granted in Calabria and Huffines's favor as to these causes of action.

In her first point of error, Compton asserts that the trial court erred in granting Calabria's and Huffines's joint motion for summary judgment. We agree and sustain this point of error.

■ Summary judgment is proper if the summary judgment record shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Tex. R.Civ.P. 166a(c). The purpose of summary judgment is the elimination of patently unmeritorious claims or untenable defenses; it is not intended to deprive litigants of their right to a full hearing on the merits of any real issue of fact. *Gulbenkian v. Penn*, 151 Tex. 412, 416, 252 S.W.2d 929, 931 (1952). In reviewing the propriety of a summary judgment, we are bound by these standards: (1) the movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovant, and any doubts must be resolved in its favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

■ A defendant moving for summary judgment assumes the burden of showing as a matter of law that the plaintiff has no cause of action against him. In order to do so, however, it is *not* necessary that the defendant disprove *all* elements of the plaintiff's cause of action. If a defendant can disprove any *one* of the essential elements of the plaintiff's cause of action, then the court should render summary judgment for the defendant. *Citizens First Nat'l Bank v. Cinco Exploration Co.*, 540 S.W.2d 292, 294 (Tex.1976).

A claim for malicious prosecution entails the following seven essential elements:

(1) A criminal prosecution was commenced against the plaintiff;

(2) The prosecution was caused by the defendants or by and through their aid and cooperation;

(3) It terminated in favor of the plaintiff;

(4) The plaintiff was innocent;

(5) The defendants lacked probable cause to bring about the proceeding;

(6) The defendants acted with malice in bringing about the proceedings; and

(7) The plaintiff suffered damages as a result.

*Coniglio v. Snyder*, 756 S.W.2d 743, 744 (Tex.App.—Corpus Christi 1988, writ denied); *Thomas v. Cisneros*, 596 S.W.2d 313, 316 (Tex.App.—Austin 1980, writ ref'd n.r.e.).

■ Actions for malicious prosecution are not favored in the law. *Parker v. Dallas Hunting & Fishing Club*, 463 S.W.2d 496, 499 (Tex.Civ.App.—Dallas 1971, no writ); *Montgomery Ward & Co. v. Kirkland*, 225 S.W.2d 906, 909 (Tex.Civ. App.—San Antonio 1949, writ ref'd n.r.e.). Public policy requires that there be wide latitude in reporting facts to a prosecuting authority in order that the exposure of crime not be discouraged. *Thomas*, 596 S.W.2d at 317. Thus, the burden of proving that no probable cause existed for instituting the proceedings in a malicious prosecution case is initially upon the plaintiff, and invariably there is an initial presumption that if a defendant acted reasonably and in good faith, he had probable cause. The presumption disappears, however, when the plaintiff produces evidence that the motives, grounds, belief, and other evidence upon which the defendant acted were indeed not probable cause for commencing the proceedings that the defendant instituted. *Akin v. Dahl*, 661 S.W.2d 917, 920 (Tex.1983), *cert. denied*, 466 U.S. 938, 104 S.Ct. 1911, 80 L.Ed.2d 460 (1984).

■ Probable cause for a criminal prosecution has been defined as the existence of such facts and circumstances as would excite belief in the mind of a reasonable person, acting on facts within his knowledge,

that the person charged was guilty of the crime for which he was prosecuted. *Id.* at 921. Thus, the question is not what the actual facts were, but what the prosecutor honestly and reasonably believed the facts to be. *Green v. Meadows,* 517 S.W.2d 799, 810 (Tex.Civ.App.—Houston [1st Dist.] 1974), *rev'd on other grounds,* 524 S.W.2d 509 (Tex.1975).

■■■ In the present case, Compton claims that Calabria and Huffines lacked probable cause to institute the criminal proceedings, and thus a summary judgment in their favor was improper. Calabria and Huffines claim, however, that the summary judgment in their favor was correct because they cannot be held liable for malicious prosecution in that they had probable cause to go to the district attorney and, even if they did not have probable cause, they are protected from liability because they made a full and fair disclosure of the facts to the prosecuting authority. Calabria and Huffines are correct in that, generally, a party causing a criminal complaint to be filed does so on probable cause where the party, in good faith, makes a full and fair disclosure of the facts and circumstances known to the party, and the complaint is thereafter filed. *Terk v. Deaton,* 555 S.W.2d 154, 156 (Tex.App.—El Paso 1977, no writ). The fact that the prosecuting attorney advised the filing of a criminal complaint is not, however, a defense to a malicious prosecution action if the defendant knowingly made false statements concerning material matters to the prosecuting attorney or withheld material facts from the prosecuting attorney. *Andrews v. Dewberry,* 242 S.W.2d 685, 688 (Tex.Civ. App.—Fort Worth 1951, writ ref'd n.r.e.). Thus, if the party causing the complaint to be filed does not act in good faith in disclosing to the prosecuting attorney all material facts known to the party, probable cause does not exist. *Eans v. Grocer Supply Co.,* 580 S.W.2d 17, 21 (Tex.App.— Houston [1st Dist.] 1979, no writ). When facts that might have a bearing on the element of probable cause in a malicious

prosecution action are undisputed, the issue of probable cause is a question of law to be decided by the court. *Kirkland,* 225 S.W.2d at 908. On the other hand, if these facts are conflicting, whether the defendant made a full and fair statement to the prosecuting attorney in instituting the prosecution is a question for the jury. *Andrews,* 242 S.W.2d at 689.

In the present case, Calabria and Huffines visited the assistant district attorney upon the advice of Calabria's attorney, J. Harris Morgan. Thus, an initial question arises as to whether Calabria and Huffines are protected under the rule that presumes a defendant had probable cause to prosecute when the defendant does so on the advice of counsel after fully and fairly disclosing all the circumstances to the attorney. *See* RESTATEMENT (SECOND) OF TORTS § 666 (1977) (effect of advice of counsel in malicious prosecution action). For purposes of this appeal, however, this initial question is academic because Calabria and Huffines consistently maintained the same account about events occurring on December 1, 1986. The disclosures made to Mann are the same as those made previously to Morgan.

■■■ Probable cause for a prosecution means existence of such facts and circumstances as would excite a belief in a reasonable mind, acting on the facts within the knowledge of the prosecutor, that the person charged was guilty of the crime *for which he was prosecuted.* *J.C. Penney Co. v. Gilford,* 422 S.W.2d 25, 28 (Tex. App.—Houston [1st Dist.] 1967, writ ref'd n.r.e.). We do not read this as requiring that a party sued for malicious prosecution must have known or determined at its peril every crime for which the plaintiff could be prosecuted based upon the facts and circumstances disclosed. We do read this, however, to mean that such defendant cannot believe that the plaintiff is generally guilty of one crime and yet falsely portray critical information which makes it appear that the plaintiff is guilty of a specifically different offense. For example, Calabria

and Huffines may honestly have believed that Compton committed criminal fraud by means of the forged Bergeron invoice, but they cannot avoid liability for malicious prosecution of Compton if they portrayed the facts of her crime to include use of that invoice to induce the December 1, 1986, payment when they knew that the invoice was not then used for that purpose. Thus, even though all of the facts may tend to show that Calabria and Huffines had probable cause to believe that Compton had committed *some* crime, a separate issue is presented as to whether Calabria and Huffines reasonably and honestly believed that Compton was guilty of the crime for which she was prosecuted, namely, felony theft committed on December 1, 1986, by knowingly obtaining money from Calabria in exchange for the forged Bergeron invoice. *See Green*, 517 S.W.2d at 810.

The evidence is undisputed that Mann independently decided what criminal offense to base his referral of Compton's case to the grand jury on and that the grand jury, in turn, decided which criminal offense to actually indict her for. The summary judgment proof clearly establishes, however, that Calabria and Huffines's entire focus and basis for complaining to Mann was the alleged use of forged invoices to induce tender of the third draw payment on December 1, 1986. Mann in his case summary specifically states:

> The Complainant for her complaint relies on a single set of circumstances which is introduced by the sworn statement of Robert Bergeron[,] Jr[.]....
>
> The invoice we are concerned with is #40829.... The #40829 invoice was completely fictitious.... D [Compton] presented this invoice for payment in December (12/1/86) 1986 and was paid the

total of $7,120.61 for the fictitious invoice.... The invoice #40829 was paid and included in the last settlement made on 12/1/86.[1]

Proper summary judgment proof shows the following: By November 1986, a bitterness had begun to grow between Calabria and Compton. Calabria was unsatisfied with Compton's progress on the project, and Compton was upset with Calabria because Calabria continuously changed her mind concerning the plans that had previously been drawn up and then would not sign change orders authorizing the changes to be properly carried out. As a result, Calabria and Compton modified the original contract on November 6, 1986. The modification, referred to as "addendum number two," altered the scheduled progress payments, making the third progress payment due upon completion of four items marked A, B, C, and D. Neither the original contract nor the addendum, however, required that Compton provide Calabria with paid receipts as a precondition to receiving the third progress payment. All that was required, according to the written contract and addendum, was that items A, B, C, and D be completed.[2] Calabria claims, nonetheless, that she and Compton orally agreed that Compton would bring the receipts on December 1. Compton denies this. The check stub from Calabria's check book on that date does not refer to any invoices substantiating the $14,400 payment, the notation being merely "Payment on Account."

Calabria kept a journal concerning the remodeling project. The entries therein dated 12/29/86 and 12/31/86 appear *inconsistent* with Calabria's assertion that Compton brought in the forged paid receipts on December 1, 1986, in order to

---

1. As consideration for the last settlement on December 1, 1986, Calabria delivered her check for $14,400 payable to Deborah Compton. Invoice #40829 covers items totaling $7,120.61.

2. The four items marked A, B, C, and D are essentially as follows:
   A. All floors in place
   B. All walls in place

C. All plumbing set
D. Cabinets and builtins
Calabria admits that under the agreement, as she understood it, she owed Compton the $14,400 on December 1, 1986, because as of that date she accepted the listed items as having been completed.

obtain the third progress payment. The journal entry dated 12/29/86 refers to a telephone conversation between Compton and Calabria. A portion of that entry reads, "[b]ring in pd receipts and how she's going to get this job finished—bring in by Wednesday–12/31/86."

Bergeron's affidavit is consistent with Compton's assertion that she picked up the invoices from Bergeron on December 30 and presented the forged receipts to Calabria on December 31 per her request. Also consistent with Compton's assertion are entries in Calabria's journal under the date "12/31/86" where Calabria records the exact figures from the Bergeron invoices, # 41203 ($4,952.74) and # 40829 ($7,120.61), in the following notation:

> **as of 12/31/86** Carpet rece[i]pt marked pd—Auto/TV—4952.75 marked pd. All appliances (kitchen pd 7120.61 except diff 800.00 on sub zero.

(Emphasis added.)

Calabria acknowledged that on the day she received the forged Bergeron invoices, she also received a carpet invoice that Compton had obtained from a subcontractor, Larry Guess. In his affidavit, Guess stated that Compton obtained the carpet invoice from him between December 30, 1986, and January 2, 1987. Thus, assuming that Calabria received the carpet invoice at the same time she received the two Bergeron invoices and that Guess is correct on his date, the invoices could not have been presented to Calabria on December 1, 1986.

In addition to the conflicting evidence concerning the dates the Bergeron invoices were used, summary judgment proof shows that before the jury trial on the criminal charge, Calabria, through Carolyn Shamis, the realtor who gave Compton's name to Calabria, offered to drop the criminal charge against Compton if Compton would drop her civil suit. Compton refused the offer. *See* RESTATEMENT (SECOND) OF TORTS, § 665 (1977) (lack of probable cause evidenced by private prosecutor's termi-nation of proceedings in favor of the accused).

Huffines testified at Compton's criminal trial that he had used the Bergeron invoices to obtain the telephone number of the Bergeron TV/Video & Appliance store, had called the store *before* December 31, 1986, to verify payment of the invoices and had discovered that the invoice for $7,120.61 had not been paid. By deposition, Huffines testified that he made several calls to the Bergeron store, one call from his office at Bank of Dallas, none from home, and others most likely from his office at Huffines Chevrolet. The telephone records of calls made from the bank and the Chevrolet company for the period between November 15, 1986, and February 15, 1987, were obtained by subpoena. These records show that no calls were made before December 31, 1986, to the number listed on the invoice for the Bergeron store. The records did establish that calls to the Bergeron number were made on January 29, 1987; January 30, 1987; February 3, 1987; and February 6, 1987. This evidence as to the dates when Huffines called Bergeron's TV, Appliance & Video tends to support Compton's testimony that she presented the forged invoices to Calabria, not on December 1, 1986, but on December 31, 1986.

We agree with Compton that the above-detailed summary judgment proof, referenced as being inconsistent with Calabria and Huffines's position, is sufficient to raise a fact question on the material issue of whether Calabria and Huffines reasonably and honestly believed that the forged Bergeron invoices were tendered by Compton on December 1, 1986, as an inducement for her obtaining the third draw payment. Under the circumstances shown, a finder of fact could conclude that from sources readily available to them, Calabria and Huffines either knew or should have determined that their representations to the district attorney's office concerning their December 1, 1986, transaction with Compton were materially incomplete, if not deliberately false. Because such a finding adversely affects the probable cause element inherent in their defense of Compton's ma-

licious prosecution claim, the trial court erred in granting them a summary judgment. Accordingly, we sustain Compton's first point of error.

In her second point of error, Compton contends that the trial court erred in failing to grant her motion for summary judgment. Because Compton neither asked for damages nor proved them up, we read her motion for summary judgment merely as seeking a judicial determination that Calabria and Huffines are liable to her on her malicious prosecution and conspiracy claims. As grounds for her second point of error respecting this motion, Compton posits that the evidence is undisputed on the probable cause issue and that as a matter of law probable cause was non-existent. As stated above, however, we find that the summary judgment evidence raises a dispute with respect to the existence of probable cause. Accordingly, we overrule appellant's second point of error.

Because we otherwise reverse the summary judgment and remand the cause for a trial on the merits, we need not address Compton's third and fourth points of error, which pertain solely to the additional matters allegedly entitling her to a reversal.

The summary judgment in favor of Calabria and Huffines is reversed; the cause is remanded to the court below for trial on the merits.