**Mary Jane FORBES, Appellant,**

v.

**Eugene J. LANZL, Appellee.**

**No. 03–98–00534–CV.**

Court of Appeals of Texas,
Austin.

Jan. 6, 2000.

Rehearing Overruled Feb. 10, 2000.

Seagal V. Wheatley, Dawn Ferrell Clements, Jenkens & Gilchrist, San Antonio, for Appellant.

Charles A. Stephens, II, Canyon Lake, for Appellee.

Before Justices JONES, B.A. SMITH and YEAKEL.

BEA ANN SMITH, Justice.

This case arises out of a once amicable relationship among neighbors that turned sour; ultimately criminal complaints were filed and Eugene Lanzl sued for conspiracy and malicious prosecution. Based on the jury's findings, the court rendered judgment in appellee Lanzl's favor. We will reverse the trial-court judgment and render judgment that Lanzl take nothing.

### Factual and Procedural Background

Mary Elson (Elson) and Lloyd Elson were married at the time of these events. Mary Jane Forbes (Forbes) is Mary's sister. Tim Masters (Masters) is the brother of Elson and Forbes. Gene Lanzl (Lanzl) was the Elson's neighbor and, for many years, their friend.

On the day in question, Lloyd Elson visited Lanzl. They first talked about repairing a bulldozer, then discussed Lloyd Elson's marital problems and his pending divorce. Lloyd Elson returned home, and was watering his trees. Forbes and Masters arrived. Forbes was worried because she had gotten a recording that Elson's phone had been disconnected. Shortly after Forbes and Masters arrived, Elson returned home. Forbes, Masters, and El-

son were on the porch while Lloyd Elson was behind the house, still watering.

Lanzl and his daughter-in-law arrived. Elson asked Lanzl why he was interfering in her divorce, why he had called Elson's office and Elson's attorney. Lanzl told her he had the right to call anyone he wanted to. He sat down in a chair on the porch. Elson then told Lloyd Elson, who was now watering in view of the porch, to leave. Lanzl did not think that Lloyd Elson should leave. Lanzl stood up; he said that Elson then came over and hit him on the chest. Masters took Elson in the house. Then Forbes hit Lanzl and he defended himself by grabbing her arm to ward off the blow. When asked how many times he was asked to leave by Elson or her siblings, Lanzl said that he did not recall because it "got redundant." Lanzl finally left when Lloyd Elson asked him to leave. At some point, Lloyd Elson quit watering and left as well. Lanzl went home, called the sheriff, then talked to the sheriff's deputy who was sent to investigate. He overheard the conversation with the deputy while the others were still on the porch and did not hear Forbes complain about her leg being hurt. Elson and her family went inside with the deputy for several minutes, and Lanzl could not hear what transpired inside.

According to Lanzl, he never asserted that it was within his civil rights to remain on the porch; rather, he asserted he had a common-law right to remain. The basis he gave for remaining was that he had to protect Lee Elson, the Elson's teenage daughter, because he believed her mother was abusing her. Several times Lanzl had reported Elson's alleged abuse of Lee to child welfare authorities.[1] He later picketed Elson's property, carrying a sign, "Teens Don't Need Abuse." Lanzl was convicted for making repeated false reports. He was also charged with stalking because of actions connected with his insistence that Elson was abusing her daughter. Although the trial court quashed the stalking indictment, this Court reversed and remanded for further proceedings. It is unclear what happened on remand; Lanzl claims that the stalking case was dismissed.

According to Elson, she asked Lanzl to leave her porch numerous times. When she "went over to take his arm" to ask him to leave again, he "jerked back and jumped up at me." She was afraid he was going to hit her or Masters. He told her that he knew his civil rights and could stay as long as he wanted. She went inside and called the sheriff. According to Elson, she went to the county attorney to make a report about what happened because the sheriff's department told her to. No one ever told her about the disposition of her complaint. In connection with the ongoing disputes and before filing this malicious prosecution suit, Lanzl told Elson he would take everything she had—the trailer, her property, and her daughter—and he would torment her the rest of her life.

According to Forbes, she thought Lanzl was going to hit Masters when Lanzl stood up. She moved to try to get in between them to prevent a fight. That was when Lanzl grabbed and twisted her arm and kicked her. She said her leg was bruised as a result of the encounter. She went to the county attorney because the sheriff's office told her to; "from the way I was explained by law enforcement, the man had no right touching me, kicking me, or doing anything to me." She said Lanzl sent her a letter demanding $10,000, which

---

1. We recite the above in an attempt to understand why Lanzl did not simply leave the porch and why Elson or Forbes might have considered his behavior irrational, as his abuse allegations appear to have been unfounded. If Elson and Forbes knew that Lee Elson was not being abused, Lanzl's insistence on remaining to defend Lee would seem irrational and perhaps frightening. Although it is clear that some events, such as the stalking charge, happened after the porch confrontation, it is not clear when Lanzl began making the abuse allegations.

she ignored;[2] then she started getting subpoenas. She had difficulty reading the complaint from the stand to verify that it was the complaint she had signed alleging that Lanzl kicked her. She said that her husband generally does her reading for her; when she is upset, she "can't read at all."

According to Lanzl, he tried to file charges against Elson and Forbes but they "refused my papers because they said I was not injured." He claimed that Elson and Forbes decided that Forbes needed to claim that she suffered some injury in order to file charges against him. He further claimed that Elson and Forbes only filed charges when they thought he was going to file a complaint against them.

■ Lanzl sued Elson and Forbes for conspiracy and malicious prosecution based on the dismissal of their complaints against him. At the close of his evidence, Elson and Forbes moved for directed verdicts. The court rendered a directed verdict in favor of Elson on both complaints and in favor of Forbes on the conspiracy complaint, but allowed the malicious prosecution complaint against Forbes to continue and be submitted to the jury. The jury awarded Lanzl $6701 in actual damages, $10,000 in exemplary damages, and $3250 in pre-judgment interest. After the verdict, Forbes moved for judgment notwithstanding the verdict, which the court denied. On appeal, Forbes brings three issues challenging the admission of certain evidence, the legal and factual sufficiency of the evidence to support the jury's findings, and the legal and factual sufficiency of the evidence to support the damages awarded. We conclude that the legal sufficiency challenge to the verdict is dispositive and do not reach the remaining points of error.[3]

## Malicious Prosecution

■ To prevail on a malicious prosecution claim against Forbes, Lanzl had to establish the following elements by a preponderance of the evidence:

(1) a criminal prosecution against plaintiff was commenced;

(2) the defendant caused (initiated or procured) the action;

(3) the prosecution terminated in the plaintiff's favor;

(4) the plaintiff was innocent;

(5) there was an absence of probable cause for the proceedings;

(6) defendant filed the charge with malice; and

(7) plaintiff was damaged by the criminal prosecution.

*Richey v. Brookshire Grocery Co.,* 952 S.W.2d 515, 517 (Tex.1997).

■ Actions for malicious prosecution are not favored. *See Browning–Ferris Indus., Inc. v. Lieck,* 881 S.W.2d 288, 291 (Tex.1994); *Compton v. Calabria,* 811 S.W.2d 945, 949 (Tex.App.—Dallas 1991, no writ). If the elements of the cause are proved, liability is established as with any other cause of action; however, there is little room for error in applying the law. *See Browning–Ferris,* 881 S.W.2d at 291. Even a small departure from the exact prerequisites for liability may threaten the delicate balance between protecting against wrongful prosecution and encouraging the reporting of criminal conduct. *See id.*

2. The clerk's record shows a seven-and-one-half-page letter from Lanzl dated January 11, 1994. He notifies Forbes of his intent to sue her and expresses his hope of "settling the problems I have with you." He then instructs her on various aspects of the law of assault and self defense, tells her she is committing perjury, tells her about the law of malicious prosecution, tells her the duties of a host to an invitee and tells her about judgment day. This particular letter does not name a specific settlement amount.

3. We decide rendition issues before remand issues. *See Bradleys' Elec., Inc. v. Cigna Lloyds Ins. Co.,* 995 S.W.2d 675, 677 (Tex. 1999); Tex.R.App. P. 43.3.

There is an initial presumption in malicious prosecution actions that the defendant acted reasonably and in good faith and had probable cause to initiate the underlying criminal proceeding. *See Richey*, 952 S.W.2d at 517–18. The probable cause inquiry is narrow. It asks only whether a reasonable person would believe that a crime had been committed given the facts as the complainant honestly and reasonably believed them to be before the criminal proceedings were initiated. *See id.* at 519. Even a failure to fully and fairly disclose all material information or knowingly providing false information to the prosecutor will not defeat a complainant's probable cause but are relevant to the issues of malice and causation in a malicious prosecution claim. *See id.*

### Probable Cause in a Malicious Prosecution Action

*Richey* discusses the burden that a plaintiff in a malicious prosecution case must carry to overcome the presumption that the defendant had probable cause. In short, the defendant's duty when reporting a suspected crime to public officials is slight; the plaintiff's burden to show lack of probable cause is heavy. Richey was a customer who entered a Brookshire food store at approximately 2:30 a.m. The night manager, Farris, saw Richey place a pack of cigarettes in his shopping cart. Farris then observed Richey "twiddle" the cigarettes in his hand and put them in his coat pocket. *See id.* at 516. Richey checked out, paying for $51.75 worth of groceries but not the cigarettes. Then Richey stopped by a bin in which customers could place items to be donated to charity. He got a sack, filled it with baby food, paid $8.89, put the sack in the bin and then left. *See id.* at 517.

Farris confronted Richey in the parking lot and asked if he had forgotten to pay for anything. When Richey said he had not,

Farris then mentioned the cigarettes. Richey said he had forgotten the cigarettes and offered to pay for them. Farris refused to accept payment and called the police. Richey was interrogated, given a citation, and released. Farris later signed a sworn statement charging Richey with theft of the cigarettes. *See id.* After the jury found Richey not guilty of theft, Richey filed suit for false imprisonment and malicious prosecution. The jury found in Richey's favor on the malicious prosecution claim. The court of appeals reversed and rendered judgment in Brookshire's favor, holding that there was no evidence to support the jury's finding that Brookshire lacked probable cause to prosecute Richey; the supreme court affirmed.[4]

The supreme court in *Richey* considered the issue of Brookshire's probable cause a question of law for the court. *See id.* at 518. The court noted that, inasmuch as Richey's leaving the store with unpaid-for cigarettes was undisputed, the only issue left was Richey's state of mind under Penal Code section 31.03. The court then said: "In a malicious prosecution case based on a criminal complaint, the complainant's failure to make a further investigation into the suspect's state of mind does not constitute lack of probable cause if all *objective* elements of a crime reasonably appear to have been completed." *See id.* The court noted that a private citizen has no duty to inquire of the suspect whether he has some alibi or explanation before filing charges. *See id.* The court also said that a failure to fully and fairly disclose all relevant facts to the prosecutor is relevant to the causation element in a malicious prosecution case, but does not affect the probable cause element. *See id.* at 519. Similarly, providing false information to the public official is relevant to the malice and causation element, not probable cause.

---

4. *Brookshire Grocery Co. v. Richey*, 899 S.W.2d 331, 337 (Tex.App.—Tyler 1995), *aff'd,*

952 S.W.2d 515, 516 (Tex.1997).

There was a vigorous dissent in *Richey.* The dissent saw probable cause as a fact issue, not a legal issue. *See id.* at 520. Although the facts that Richey left the store without paying for the cigarettes in his pocket were undisputed, conflicting inferences could be drawn according to the dissent. Resolution of conflicting inferences, including those arising from undisputed facts, lies with the factfinder. *See id.* The dissent considered that the facts and circumstances supported an inference that Richey did not intend to steal the cigarettes and thus the jury's finding of no probable cause should have been upheld.[5]

The crucial consideration in the case before us is whether Lanzl produced any evidence to overcome the presumption that Forbes had probable cause to file her assault complaint. As did the court in *Richey,* we analyze the elements of the offense involved. We discuss the elements of self-defense as well as assault, because under the facts of this case, it is important to clearly separate an analysis of probable cause from an analysis of guilt or innocence.

### Elements of Assault and Self-Defense

■ A person commits assault under the Penal Code if the person:

(1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse;

(2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse;

(3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.

Tex. Penal Code Ann. § 22.01 (West 1994 & Supp.1999) (Penal Code).[6] An assault under sub-section one is a class A misdemeanor while assault under subsections two or three is a class C misdemeanor (with certain enhancements available). "Bodily injury" means "physical pain, illness, or any impairment of physical condition." *Id.* § 1.07(a)(8). Bodily injury is a broad term and encompasses even relatively minor physical contacts so long as they constitute more than mere offensive touching. *See Lane v. State,* 763 S.W.2d 785, 786 (Tex.Crim.App.1989) (police officer testified that she suffered physical pain when her wrist was twisted by appellant as he grabbed her wallet and twisted it out of her hands and her wrist was bruised; enough to constitute "bodily injury").

■ The definition of assault is the same, whether in a civil or criminal trial. *See Wal–Mart Stores, Inc. v. Odem,* 929 S.W.2d 513, 522 (Tex.App.—San Antonio 1996, writ denied). "[W]ith the exception of the rule of evidence which gives a person accused of a crime the benefit of a reasonable doubt, the law of self-defense is the same in both civil and criminal cases." *Foster v. H.E. Butt Grocery Co.,* 548 S.W.2d 769, 771 (Tex.Civ.App.—San Antonio 1977, writ ref'd n.r.e.). In *Odem,* 929 S.W.2d at 518, a store greeter thought that Odem left the store with unpaid merchan-

---

**5.** *Richey* almost seems to hold that probable cause is a matter of law for the court to decide rather than a matter of fact for the jury by viewing only the facts and not drawing inferences from those facts; at least, not inferences favorable to the plaintiff in the malicious prosecution suit. The court did not explicitly apply the "equally reasonable inferences are improper and non-probative" version of the scintilla rule in evaluating the evidence in *Richey. See Wal–Mart Stores, Inc. v. Gonzalez,* 968 S.W.2d 934, 936 (Tex.1998); *Litton Indus. Prods., Inc. v. Gammage,* 668 S.W.2d 319, 324 (Tex.1984); *see generally,* William V. Dorsaneo, III, *Adjustments to Evi-dentiary Standards of Review,* State Bar of Tex. Prof. Dev. Program, Advanced Civil Appellate Course, P–2 (1999).

**6.** If we were dealing with a criminal case, the applicable version of the Penal Code would be the version in effect August 23, 1993, as the effective date of the current Penal Code was January 1, 1994. *See* Penal Code, 73d Leg., R.S., ch. 900, § 1.18, 1993 Tex. Gen. Laws 3586, 3705. However, the definition of the offense was the same, so we cite the current code for convenience.

dise. The employee grabbed Odem by the arm, turned her around, and reached into her purse to retrieve a readily visible blue package. Odem described the act as a "pull or touch of either her elbow or hand." *Id.* The court said that Odem's testimony clearly disclosed a grabbing of the arm which Odem considered offensive. "Moreover, if the jury accepted the testimony showing that Saenz only grabbed Odem's purse while she was holding on to it, and not any portion of Odem's body, the conduct would, nevertheless, constitute an assault under subsection (3) of section 22.01." *Id.* at 522.

■ Self-defense appears in the Penal Code chapter "Justification Excluding Criminal Responsibility." *See* Penal Code §§ 9.01–9.63. With certain exceptions, a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force. *See id.* at § 9.31(a). In discussing whether to instruct on self-defense, a court held, "Thus, if the defendant was acting in self-defense, the assault would not be unlawful." *Foster,* 548 S.W.2d at 771.

Lanzl claims that any contact he had with Elson or Forbes was made in self-defense. Ultimately, had there been a criminal trial, the court might have found Lanzl entitled to an instruction on self-defense; however, the court might also have found that Lanzl provoked the difficulty and was not entitled to the instruction. Similarly, had Forbes or Elson been tried for assault, the court might have found Lanzl's provocation justified their actions as self-defense, or might have found they assaulted him. However, we are not evaluating the result in a criminal trial; our task is to evaluate whether Lanzl overcame the presumption that Forbes had probable cause to bring a complaint.

Although we view the evidence in the light most favorable to Lanzl,[7] the issue is whether a reasonable person in Forbes's position would have believed that a crime had been committed given the facts as she honestly and reasonably believed them to be before the criminal proceedings were initiated. *See Richey,* 952 S.W.2d at 519. Viewing the evidence relevant to that probable cause determination in the light most favorable to Lanzl, we hold that he has not overcome the presumption that Forbes had probable cause to file her complaint.

Lanzl refused to leave Elson's porch even though she repeatedly told him to leave. Lanzl does not dispute that Elson, Forbes and Masters all told him to leave. Instead, he claims he asserted a common-law right to remain in defense of another. Lanzl was involved in a scuffle with Elson. Taking as true Lanzl's version that Elson started the fracas by hitting him, from Forbes's view, Elson may have been justified in using force against Lanzl because he refused to leave her property. Lanzl was five foot eleven inches tall and weighed one hundred eighty pounds. Forbes was five feet two and weighed one hundred ten to one hundred fifteen pounds. It was not unreasonable for Forbes to view Lanzl's continued presence and altercation with her sister as a threat of harm. Lanzl does not dispute that he grabbed Forbes's arm. He disputed twisting her arm, kicking her leg, or otherwise inflicting injury. We note that in opening argument Lanzl's counsel conceded that Forbes was injured, just as Forbes's counsel conceded that the injury was slight.

■ Lanzl complains that Forbes exaggerated or falsified the degree of contact and injury to make the sheriff accept charges against him, specifically by claim-

---

7. In deciding a no-evidence point, we must consider only the evidence and inferences tending to support the finding of the trier of fact and disregard all evidence and inferences to the contrary. *See Burroughs Wellcome Co. v. Crye,* 907 S.W.2d 497, 499 (Tex.1995); *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex. 1965).

ing he bruised her leg. However, it is undisputed that there was physical contact between Lanzl and Forbes and that Forbes suffered bruising on her leg; photographs of her bruised leg were admitted in evidence. Whether Lanzl could later show he did not inflict this particular injury is relevant to establishing his innocence of the charges but is not relevant to rebutting the presumption of Forbes's probable cause to reasonably believe she was the victim of an assault. The degree of Forbes's injury is relevant to the level of criminal prosecution involved but is not relevant to whether Forbes had probable cause to file a complaint. *See Zess v. Funke,* 956 S.W.2d 92, 94 (Tex.App.—San Antonio 1997, no writ) (value of allegedly stolen trailer goes to level of offense but not to question of probable cause). Similarly, Lanzl contends that the physical contact on his part was defensive; he was only preventing Forbes from hitting him. Again, whether his contact was defensive only is relevant to his innocence but not to whether Forbes could reasonably have believed she had been the victim of an assault.

Lanzl argues he must refute only the charge of an assault by kicking and inflicting a bruise, because that is the complaint signed by Forbes. Forbes went to the county attorney and told him that Lanzl had grabbed, twisted, and hurt her arm as well as kicking and bruising her leg. Although she signed the document that the county attorney prepared, she testified that she had minimal reading skills. The complaint was dismissed before it ever resulted in an information, which could have had multiple counts based on *all* the facts Forbes related. Taking as true Lanzl's statement that the county attorney's office "refused his charges" because he was not injured, we can infer that the county attorney either failed to acknowledge subsections (b) and (c) of section 22.01 of the Penal Code, or had some kind of policy against pursuing Class C assault cases. Further, Lanzl's counsel conceded Forbes was injured. We cannot say that Forbes

lacked probable cause because the county attorney failed to recognize every form of assault under the Penal Code based on the facts as Forbes related them. This would unduly burden any person making such a complaint.

### *Application of* Richey

Malicious prosecution cases involve a delicate balance between encouraging the reporting of crime and protecting individuals from wrongful prosecution. *See Richey,* 952 S.W.2d at 517. *Richey* imposes a very limited duty in reporting suspected crime to a public official, at least in the context of defending oneself against a malicious prosecution cause. The defendant can even fail to fully disclose all facts and still not lack probable cause to report a complaint. *See id.* at 519.

If Richey could not overcome the presumption that Brookshire had probable cause to believe he stole the cigarettes he placed in his pocket, it is nearly impossible after this physical altercation for Lanzl to overcome the presumption that Forbes had probable cause to believe she had been the victim of an assault. *Richey* involved a store manager with some training in dealing with shoplifting. A number of factors could have led to the common-sense conclusion that Richey did not intend to steal the cigarettes. Nevertheless, the court found probable cause for filing a complaint based on Richey's admission that he left the store without paying for the cigarettes. We cannot impose a more onerous duty to evaluate probable cause on Forbes than the court imposed on the store manager in *Richey.* Forbes reported the facts as she knew them: Lanzl persisted in remaining on her sister's porch after being asked to leave, scuffled with her sister, and grabbed her arm and hurt her. Her leg was bruised and she believed Lanzl did it. She understood the sheriff's office to say she was supposed to file a complaint. In a malicious prosecution case, she is presumed to have had probable cause to file her complaint.

## Conclusion

Accordingly, we conclude that Lanzl produced no evidence to overcome the presumption that Forbes had probable cause to file her complaint. Because we find the legal sufficiency issue dispositive, we need not discuss appellant's other issues. We sustain appellant's issue challenging the legal sufficiency of the evidence, reverse the trial-court judgment, and render judgment that Lanzl take nothing.

J. WOODFIN JONES, Justice, dissenting.

I respectfully dissent.

In my view, this is a very simple case which the majority makes very complicated. There was an altercation between Lanzl and Forbes. On the basis of that altercation, Forbes filed the following criminal charge against Lanzl:

> I, Mary Jane Forbes, being duly sworn, do state upon my oath that I have good reason to believe and do believe and I charge that heretofore, and before the making and filing of this complaint, on or about the 20th day of August, 1993, in the County of Comal and State of Texas Eugene Lenzl [sic], did then and there intentionally, knowingly or recklessly cause bodily injury to another to wit: Mary Jane Forbes, *by kicking the said Mary Jane Forbes's leg with his foot* against the peace and dignity of the State.

/s/ Mary J. Forbes
Complainant

(Emphasis added.) This charge was later dismissed, whereupon Lanzl filed suit against Forbes for malicious prosecution.

In the trial of this lawsuit, Lanzl testified unequivocally that he had not kicked Forbes. Forbes testified that he had. The jury was properly charged on the seven elements of a malicious prosecution action. The jury was also instructed on the general strictness required before they could find in Lanzl's favor:

> You are instructed that actions for malicious prosecution are not favored in law. Public policy favors the exposure of crime, which a recovery against a citizen filing a complaint about a crime tends to discourage.

> Public policy requires strict adherence to the rules governing malicious prosecution actions; any departure from the exact prerequisites for liability may threaten the delicate balance between protecting against wrong and encouraging the reporting of criminal conduct.

Finally, the jury was instructed extensively on the meaning of "probable cause," the initial presumption that the defendant acted reasonably, and the necessity of finding that Forbes lacked probable cause before they could find her liable for malicious prosecution:

> "Probable cause" means the existence of such facts and circumstances as would excite belief in the mind of a reasonable person, acting on facts within his or her knowledge, that the person charged was guilty of the offense of assault. The question of probable cause does not depend upon the guilt or innocence of the Plaintiff.

> . . . .

> There is an initial presumption that the Defendant acted reasonably and in good faith and had probable cause to initiate the proceedings; however, that presumption disappears once the Plaintiff produces evidence that motives, grounds, beliefs and other evidence upon which the Defendant acted did not constitute probable cause, and the burden then shifts to the Defendant to offer proof of probable cause.

> . . . .

> You are instructed that the question of probable cause does not depend upon the guilt or innocence of the Plaintiff, but on whether the Defendant had reasonable grounds to believe, and did believe, that Plaintiff was guilty from the facts known to the Defendant at the time of the filing of the complaint.

Moreover, if there is probable cause for the belief in the guilt of the Plaintiff for the offense complained of, the Defendant is not liable for malicious prosecution.

With these instructions, the jury was asked in Question No. 1: "Do you find from a preponderance of the evidence that MARY JANE FORBES initiated or procured a malicious prosecution case against EUGENE J. LANZL?" The jury answered "Yes."

I agree that *Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515 (Tex.1997), is the controlling authority. There, the underlying facts were undisputed, allowing the supreme court to conduct a de novo review. The court did, however, address how to decide whether the probable cause issue is one of law or fact, and what to do when the issue is one of fact:

> Whether probable cause is a question of law or a mixed question of law and fact depends on *whether the parties dispute the underlying facts.* When the facts underlying the defendant's decision to prosecute are disputed, *the trier of fact must weigh evidence and resolve conflicts to determine if probable cause exists,* as a mixed question of law and fact.

*Id.* at 518 (emphasis added).

In the present case, based on the specific assault charge Forbes brought against Lanzl, the relevant "underlying fact" was whether Lanzl kicked Forbes during their altercation. As noted above, that fact was highly disputed. If Lanzl did not actually kick Forbes, then Forbes could not have had probable cause to charge Lanzl with a criminal offense that was based solely on an assertion that he kicked her. Thus, Lanzl's unequivocal testimony that he did not kick Forbes clearly constituted evidence "that the motives, grounds, beliefs, and other evidence upon which the defendant acted did not constitute probable cause." *Id.* at 518. With the presence of such evidence, the initial presumption of reasonableness disappeared. When

Forbes testified that Lanzl did kick her, a classic disputed fact issue was created. Under the supreme court's holding in *Richey,* the issue was one for the jury to decide as a mixed question of law and fact. *See id.* The members of the jury did decide that issue, and, in light of the ample evidence to support their answer, I would respect their right to do so.

I would affirm the trial court's judgment.