MARY'S OPINION HEADING 



 NO. 12-00-00207-CV



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


PEGGY MIZE AND L. D. MIZE,
§
 APPEAL FROM THE SECOND

APPELLANTS



V.
§
 JUDICIAL DISTRICT COURT OF


ROSEMARY T. SWETLAND, PATSY J.

KINCHEN, AND THE GRAND CHAPTER OF

TEXAS ORDER OF THE EASTERN STAR,

APPELLEES
§
 CHEROKEE COUNTY, TEXAS

 

 Peggy and Lester D. Mize ("Peggy" and "Lester") appeal in five issues from a summary
judgment entered in favor of Rosemary T. Swetland ("Swetland"), Patsy J. Kinchen ("Kinchen"),
and the Grand Chapter of Texas Order of the Eastern Star ("Eastern Star") on the Mizes' causes of
action for slander, intentional infliction of emotional distress, and malicious prosecution. We affirm.


Factual Background


 The summary judgment evidence showed that the Eastern Star is a tax exempt organization
operating for the general welfare of society and participating in specified benevolent works. It is
organized into local chapters across the State of Texas. In August of 1992, Peggy and Lester were
accepted as members of the Rusk Chapter, Order of the Eastern Star ("the Chapter"). Peggy later
served as Worthy Matron of the Chapter, and Lester served as Worthy Patron. On May 29, 1996,
a meeting was called by Swetland, in her capacity as the Worthy Grand Matron of Eastern Star, the
highest state level position in the organization, to reprimand Peggy and Lester in their capacities as
Worthy Matron and Worthy Patron of the Chapter. (1) The following day, Peggy and Lester sent a
letter to Swetland, quitting Eastern Star. On July 29, 1996, the Chapter held a trial, formally
expelling Peggy and Lester from Eastern Star. (2) The evidence showed that the procedure for Peggy
and Lester to have this expulsion reconsidered was to return to the Chapter a pamphlet of Eastern
Star initiation rituals and to have a Chapter member stand up in an open meeting stating that they
wanted an appeal of the expulsion.

 On August 20, 1996, a regular meeting of the Chapter was scheduled for 7:30 p.m. at the
Euclid Masonic Lodge ("the lodge") in Rusk. Some time between 7:00 and 7:30 p.m. that evening,
Peggy and Lester entered the lodge to deliver papers to Kinchen who was Worthy Matron of the
Chapter at that time. Upon confronting Swetland, Lester ordered her out of the room and told Peggy
to enter the actual meeting room where the Chapter's meeting was set to begin. Swetland responded
to Lester, who was operating a video recorder during the entire incident, that they did not belong at
the meeting. Peggy and Lester then left the lodge.

 At 7:40 p.m., after the meeting of the Chapter had begun, Lester telephoned the lodge and
demanded to speak to Swetland. During this phone call, Lester informed her, "I'm going to stop
everything you're doing if you don't talk to me." He later stated, "I'm going to get even with you. 
That's what I'm going to do. I am going to get the whole bunch." Lester went on to say "You won't
forget me. I'm with you lady for your life. You screwed the wrong guy." Afterwards, the Rusk
Police Department responded to a disturbance call from the lodge. Swetland and Kinchen filed
criminal complaints against Peggy and Lester. Within the week, the Rusk County Attorney filed
informations charging both Lester and Peggy with criminal trespass and disrupting a meeting and
charging Lester with harassment. The harassment charge was dismissed by the county attorney on
August 29, 1996, and the remaining two charges were dismissed by the Cherokee County Court at
Law on August 19, 1997, for failure to comply with the Speedy Trial Act.



Procedural Background


 In December 1997, Peggy and Lester filed suit against Swetland, Kinchen, and the Eastern
Star seeking at least three million dollars in damages for slander, intentional infliction of emotional
distress, and malicious prosecution. Swetland, Kinchen, and Eastern Star filed a no evidence motion
for summary judgment contending that Peggy and Lester had failed to produce any evidence of
specified elements of the three torts pled. (3) The trial court granted the motion of all three defendants
in its entirety. Peggy and Lester timely perfected this appeal.


Standard of Review


 Under the no evidence summary judgment rule, a party may move for summary judgment
if, after adequate time for discovery, there is no evidence of one or more essential elements of a
claim or defense on which the non-movant would have the burden of proof at trial. See Tex. R. Civ.
P. 166a(i). The motion must specify the elements for which there is no evidence. Id. The motion
must be granted unless the respondent produces summary judgment evidence raising a genuine issue
of material fact. Id.

 A request for a "no evidence" summary judgment is, in effect, a request for a pretrial-directed
verdict. See Moore v. K-Mart Corp., 981 S.W.2d 266, 269 (Tex. App.-San Antonio 1998, pet.
denied). We apply the same legal sufficiency standard in reviewing no evidence summary
judgments as we apply in reviewing directed verdicts. See id. We review the evidence in the light
most favorable to the respondent and disregard all contrary evidence and inferences. Id. If the
respondent produces more than a scintilla of probative evidence to raise a genuine issue of material
fact, a no evidence summary judgment is improper. Id. If the evidence supporting a finding rises
to a level that would enable reasonable, fair-minded persons to differ in their conclusions, then more
than a scintilla of evidence exists. Merrell Dow Pharmaceuticals, Inc. v. Havner, 953 S.W.2d 706,
711 (Tex. 1997). Less than a scintilla of evidence exists when the evidence is so weak as to do no
more than create a mere surmise or suspicion of a fact, and the legal effect is that there is no
evidence. See Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983). We are not required to
ascertain the credibility of affiants or to determine the weight of evidence in the affidavits,
depositions, exhibits and other summary judgment proof. See Gulbenkian v. Penn, 151 Tex. 412,
416, 252 S.W.2d 929, 931 (1952). The only question is whether or not an issue of material fact is
presented. Id.


Analysis


 In their issues three, four and five, Peggy and Lester respectively contend that they raised fact
issues regarding the elements of the torts slander, intentional infliction of emotional distress, and
malicious prosecution. 

Slander

 In their no evidence motion for summary judgment, Swetland, Kinchen and Eastern Star
argued that Peggy and Lester had failed to produce of any element of their cause of action for
slander. In their third issue, Peggy and Lester specifically contend that they were slandered by
Swetland and Kinchen when they filed criminal charges against them. Slander is a defamatory
statement that is orally communicated or published to a third person without legal excuse. Randall's
Food Markets, Inc. v. Johnson, 891 S.W.2d 640, 646 (Tex. 1995). A plaintiff in a slander or
defamation action must offer clear and convincing affirmative proof of what was communicated to
avoid summary judgment. See Casso v. Brand, 776 S.W.2d 551, 558 (Tex. 1989). Swetland and
Kinchen contend that there was nothing in the summary judgment record which indicates specifically
what they communicated to the Rusk policeman on the night of the incident or to the Rusk County
Attorney later. The affidavits which they signed are not part of the record before us. Further, the
information formally charging Peggy and Lester with the offenses of criminal trespass, disrupting
a meeting or procession, and harassment are not in the record before us. We must have more than
just a claim that the criminal charges made by Swetland and Kinchen were false in order to establish
the cause of action for slander. Because Peggy and Lester have failed to offer clear and convincing
affirmative proof of slander, the trial court correctly granted a no evidence summary judgment on
this cause of action. 


Intentional Infliction of Emotional Distress

 In their no evidence motion for summary judgment, Swetland, Kinchen and Eastern Star
contended that Peggy and Lester had failed to produce evidence of any element of intentional
infliction of emotional distress. In their fourth issue, Peggy and Lester contend that the trial court
erred in determining there was no evidence of intentional infliction of emotional distress which
created a fact issue for a jury to determine. The elements of intentional infliction of emotional
distress are: (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and
outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the emotional
distress that the plaintiff suffered was severe. City of Midland v. O'Bryant, 18 S.W.3d 209, 216
(Tex. 2000). Courts must determine as a threshold matter whether the defendant's conduct may
reasonably be regarded as so extreme and outrageous to permit recovery. Id. at 216-17. To be
extreme and outrageous, conduct must be so outrageous in character and so extreme in degree, as
to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable
in a civilized community. Id. at 217.

 Peggy and Lester contend that, under the facts before us, Swetland and Kinchen's conduct
following the incidents of August 20, 1996, satisfied the second element of the tort of intentional
infliction of emotional distress. Swetland and Kinchen contacted law enforcement officials after the
face-to-face confrontation at the lodge with Peggy and Lester and the ensuing, threatening phone
call. To react to threatening and aggressive behavior from others by contacting law enforcement
officials is not extreme and outrageous conduct. The summary judgment evidence showed that
Swetland had been "frightened" as a result of the incidents which had been initiated by Peggy and
Lester. There was, therefore, no evidence of the second element of intentional infliction of
emotional distress. Accordingly, the trial court properly granted the no evidence motion for
summary judgment on this cause of action. As a result, we will not reach the summary judgment
evidence Peggy and Lester offered regarding the remaining elements of this tort.

Malicious Prosecution

 In their fifth issue, Peggy and Lester contend that Swetland and Kinchen maliciously
prosecuted them. A plaintiff in a malicious prosecution suit must establish:


 (1) the commencement of a criminal prosecution against the plaintiff;


 (2) causation (initiation or procurement) of the action by the defendant;


 (3) termination of the prosecution in the plaintiff's favor;


 (4) the plaintiff's innocence;


 (5) the absence of probable cause for the proceedings;


 (6) malice in filing the charge; and


 (7) damage to the plaintiff.



Richey v. Brookshire Grocery Co., 952 S.W.2d 515, 517 (Tex. 1997).

 In their no evidence motion for summary judgment, Swetland, Kinchen and Eastern Star
alleged that Peggy and Lester had failed to produce evidence of elements four through seven of a
malicious prosecution claim. Actions for malicious prosecution are not favored in law. Forbes v.
Lanzl, 9 S.W.3d 895, 898 (Tex. App.-Austin 2000, pet. denied). The probable cause determination
asks whether a reasonable person would believe that a crime had been committed given the facts as
the complainants honestly and reasonably believe them to be before the criminal proceedings were
initiated. Richey, 952 S.W.2d at 517. There is an initial presumption in malicious prosecution
actions that the defendant acted reasonably and in good faith and had probable cause to initiate the
proceedings. Id. That presumption disappears once a plaintiff produces evidence that the motive,
grounds, beliefs and other evidence upon which the defendant acted did not constitute probable
cause. Id. at 518. When the facts are not contested, and there is no conflict in the evidence directed
to that issue, the question of probable cause is a question of law which is to be decided by the court. 
Id.

 The crucial consideration in the case before us is whether Peggy and Lester produced
evidence to overcome the presumption that Swetland and Kinchen had probable cause to file their
complaints of criminal trespass, disrupting a meeting or procession, and harassment. See Forbes,
9 S.W.3d at 900. Furthermore, we must separate the analysis of probable cause from an analysis of
guilt or innocence in a malicious prosecution cause of action. See id.

 A person commits criminal trespass under the penal code if he enters or remains on property
of another without effective consent or he enters or remains in a building of another without effective
consent, and he: (1) had notice that the entry was forbidden; or (2) received notice to depart but
failed to do so. Tex. Pen. Code Ann. § 30.05 (Vernon Supp. 2001). A person commits the offense
of disrupting a meeting or procession if he obstructs or interferes with a meeting, procession or
gathering by physical action of verbal utterance. See Tex. Pen. Code Ann. § 42.05 (Vernon 1994). 
A person commits the offense of harassment if, with intent to harass, annoy, alarm, abuse, torment,
or embarrass another, he: (1) initiates communication by telephone and in the course of the
communication makes a comment, request, suggestion or proposal that is obscene; or (2) threatens
by telephone, in a manner reasonably likely to alarm the person receiving the threat, to inflict bodily
injury on the person or to commit a felony against the person, a member of his family, or his
property. See Tex. Pen. Code Ann. § 42.07 (Vernon Supp. 2001).

 Although we are required to review the summary judgment evidence in the light most
favorable to Peggy and Lester, the issue is whether a reasonable person in Swetland and Kinchen's
positions would have believed that these crimes had been committed given the facts as they honestly
and reasonably believe them to be before the criminal proceedings were initiated. See Forbes, 9
S.W.3d at 901. Here, Swetland and Kinchen were confronted by Peggy and Lester prior to a called
meeting of the Chapter. Lester came into the lodge with a video recorder and acted as if he were
taking charge by ordering Swetland around and telling Peggy to go into the room where the actual
meeting of the Chapter was about to begin. Following that confrontation, Lester called Swetland
on the telephone after the meeting had begun and stated: "I'm going to stop everything you're doing
if you don't talk to me." "I'm going to get even with you. That's what I'm going to do." "I'm
going to get the whole bunch." "You won't forget me." "I'm with you lady for your life." "You
screwed the wrong guy." Swetland and Kinchen knew that Peggy and Lester had respectively been
Worthy Matron and Worthy Patron of the Chapter and, therefore, knew the proper procedure for
appealing actions taken by the Eastern Star with which they did not agree. Swetland and Kinchen
knew that the actions taken by Peggy and Lester were not proper under the procedural rules of the
Eastern Star. The aggressive actions of Peggy and Lester in the face-to-face confrontation at the
lodge just prior to the beginning of the scheduled meeting of the Eastern Star could be reasonably
interpreted as hostile. Then, the phone call from Lester after the meeting had begun could be
interpreted by a reasonable person as threatening not only to the safety of Swetland and Kinchen,
but to the entire Chapter.

 Peggy and Lester respond that they were escorted onto the premises by an unnamed member
of the Chapter and that they had entered the lodge with the approval of a member of the Chapter. 
However, they have not shown that either of these alleged facts were communicated to or known by
Swetland or Kinchen during the encounter of August 20 and their subsequent communication with
law enforcement officials. Peggy and Lester further allege that the bare fact that Kinchen worked
for the Rusk County Attorney at the time of the incidents amounts to evidence that she was
maliciously prosecuting them. However, from an objective view of the facts known to her when she
communicated with law enforcement officials, Kinchen could have reasonably believed there was
probable cause for filing these charges against Peggy and Lester. An individual who works for a law
enforcement agency is not precluded by that employment from reporting criminal activity to the
appropriate officials when they have probable cause to believe that criminal activity has occurred. 
We hold that Peggy and Lester have failed to produce any evidence which would overcome the
presumption that Swetland and Kinchen had probable cause to file their complaints. Thus, the trial
court correctly granted a no evidence summary judgment on Peggy and Lester's cause of action for
malicious prosecution. 

 Issues three, four and five are overruled. Because these issues are dispositive of this appeal,
we need not consider Peggy and Lester's remaining issues.

 The judgment of the trial court is affirmed.



 JIM WORTHEN 

 Justice



Opinion delivered August 15, 2001.

Panel consisted of Davis, C.J., Worthen, J., and Griffith, J.












(DO NOT PUBLISH)
1. The record before us does not specify why Peggy and Lester were being reprimanded.
2. Again, the record does not state the reasons for the Chapter taking this action.
3. In this same motion, Swetland, Kinchen and Eastern Star also moved for a traditional summary judgment
arguing that (1) they were immune from liability because Swetland and Kinchen were acting as officers of a
charitable organization and (2) the causes of action for slander and malicious prosecution were barred by
limitations. Because we conclude, as will be explained below, that the trial court properly granted the no evidence
portion of the motion for summary judgment, we need not address these contentions.