**J.C. PENNEY COMPANY, INC., Appellant,**

v.

**Kristen Ashley RUTH, Appellee.**

No. 06–98–00105–CV.

Court of Appeals of Texas, Texarkana.

Submitted Nov. 3, 1998.

Decided Nov. 25, 1998.

Michael Ray McGown, Law Office of Michael R. McGown, Beaumont, for appellant.

W. Don Bush, Beaumont, for appellee.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

## OPINION

GRANT, Justice.

Kristen Ruth sued J.C. Penney Company, claiming false arrest and malicious prosecution. Ruth prevailed at trial, and a jury awarded her $20,000 in actual damages, $5,000 in attorney's fees, and $50,000 in exemplary damages. J.C. Penney appeals from the denial of its motion for instructed verdict and the denial of its motion for judgment notwithstanding the verdict on Ruth's malicious prosecution claim.

J.C. Penney raises several points of error concerning two factual issues. J.C. Penney contends that Ruth presented no evidence that J.C. Penney's agents acted either with malice or without probable cause. J.C. Penney contends that, in the absence of such evidence, the court erred by denying its motion for an instructed verdict or, alternatively, erred by submitting jury question 2 to the jury or, alternatively, erred by overruling J.C. Penney's motion for j.n.o.v.

The evidence shows that Kristen Ruth, age 17, and Cori Cates, age 17, went shopping at a J.C. Penney store. They were carrying bags from other stores containing purchases made by Cates that evening. Cates picked up a pair of pantyhose and took them with her to the lingerie department, where she obtained and tried on a brassiere in a dressing room. She asked Ruth to join her in the dressing room to see if she thought the brassierie would be appropriate to wear under a prom dress. Ruth brought the bags and the pantyhose into the dressing area and stayed there briefly. While there, an announcement was made that the store was closing. When they left the dressing room, Ruth was carrying her own purse, and Cates was carrying everything else. Cates went to the counter and paid for the bra (about $43 to $45), but did not pay for the pantyhose, (valued at $5.50) which were inside one of the other bags.

After they left the store, they were stopped by security, who searched the bags carried by Cates and found the pantyhose. Cates explained that because of their hurry she had forgotten the pantyhose. Both girls were then taken to a security office and

questioned for about forty minutes before the police were called. Both girls signed what J.C. Penney describes as an "acknowledgment" form. Ruth testified that the officers told her if she signed the form she would be permitted to go home and call her mother. Cates also testified that the officers told her and Ruth that they must sign the form before they could leave and that it was not an admission of guilt. The officers neither confirmed nor denied this allegation. They also testified that they had been trained to inform the alleged shoplifters that the form was for their own protection as well, because it would ensure that no additional items would be added to the allegedly stolen items listed on the form. The "acknowledgment," despite its name, constituted a confession of the crime of theft of the pantyhose. On that same date, Cates also signed another document entitled "Texas–Civil Demand Notice," agreeing that she had confessed to theft of merchandise and stating that she understood that she might receive a letter seeking recovery of civil monetary damages.

When the police arrived, they took both girls to jail, where Cates was shortly released, but where Ruth remained until her mother arrived at about 4:00 a.m.

J.C. Penney filed a criminal charge against Ruth in municipal court, but the charge was dismissed because J.C. Penney failed to appear for trial. After Ruth filed this lawsuit, J.C. Penney refiled the same criminal charge, but when called for trial, J.C. Penney failed to appear a second time, so the charges were dismissed again. Ruth filed suit against J.C. Penney for false arrest and for malicious prosecution. The jury found for her on both grounds. The trial court denied J.C. Penney's motion for a directed verdict, but later granted a motion for j.n.o.v. on the false arrest cause of action.

J.C. Penney has raised several points of error involving whether there was any evidence that its agents acted with malice or had probable cause to prosecute Ruth.

■ To prevail on a claim of malicious prosecution, a plaintiff must establish the following:

(1) commencement of a criminal prosecution against the plaintiff; (2) causation (initiation or procurement) of the action by the defendant; (3) termination of the prosecution in the plaintiff's favor; (4) the plaintiff's innocence; (5) the absence of probable cause for the proceedings; (6) malice in filing the charge; and (7) damage to the plaintiff. *Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 517 (Tex.1997); *Metzger v. Sebek*, 892 S.W.2d 20, 41–42, 42 n. 10 (Tex. App.—Houston [1st Dist.] 1994, writ denied).

■ Malicious prosecution does not present a question of whether J.C. Penney had probable cause to stop Ruth and question or arrest her. That issue is a part of the false arrest claim on which J.C. Penney obtained a j.n.o.v. The question is whether J.C. Penney had probable cause to *prosecute* Ruth. Thus, J.C. Penney contends that there is no evidence that it had no probable cause to initiate the proceedings or that it had any malice in filing the charge.

■ We first review the record for any evidence of probable cause. There is an initial presumption that the defendant in a malicious prosecution case acted reasonably and in good faith and had probable cause to initiate the proceedings. *Richey*, 952 S.W.2d at 517; *Metzger*, 892 S.W.2d at 42. The presumption disappears once the plaintiff produces evidence that the motives, grounds, beliefs, and evidence upon which the defendant acted did not constitute probable cause. *Richey*, 952 S.W.2d at 518. The burden then shifts to the defendant to offer proof of probable cause. *Id.* If the facts underlying the decision to prosecute are not disputed, whether probable cause existed is a question of law to be decided by the trial court. *Id.; Burrows v. Neiman–Marcus Group, Inc.*, 976 S.W.2d 784 (Tex.App.—Houston [1st Dist.] 1998, n.w.h.).

■ Probable cause is defined as the existence of such facts and circumstances as would excite belief in a reasonable mind, acting on the facts within the knowledge of the prosecutor [complainant], that the person charged was guilty of the crime for which he was prosecuted. *Richey*, 952 S.W.2d at 517. The probable-cause determination asks

whether a reasonable person would believe that a crime had been committed, given the facts as the complainant honestly and reasonably believed them to be before the criminal proceedings were instituted. *Id.*

■ In a malicious prosecution case based on a criminal complaint, the complainant's failure to make a further investigation into the suspect's state of mind does not constitute lack of probable cause if all objective elements of a crime reasonably appear to have been completed. *See Thomas v. Cisneros,* 596 S.W.2d 313, 317–18 (Tex.Civ.App.— Austin 1980, writ ref'd n.r.e.); *Carswell v. Southwestern Bell Tel. Co.,* 449 S.W.2d 805, 817 (Tex.Civ.App.—Houston [1st Dist.] 1969, no writ).

In this case, the security guard watched Ruth and Cates leave the store and had probable cause to believe that one of them was leaving without paying for an item. At that point, Ruth was wearing relatively tight-fitting clothing and was carrying only a purse, while Cates was carrying multiple bags and her own purse, but this did not negate the possibility that Ruth had the item or that there had been collusion between the two. Thus, the trial court concluded that there was undisputed evidence adequately justifying a stop and arrest, and rendered a j.n.o.v. as to the false arrest claim.

When the security guard searched the bags, however, he found that Cates had the item inside one of her bags. Ruth did not have the bag containing the pantyhose, and the guard did not see Ruth hide the item. It is clear from the evidence that the bags and their contents belonged to Cates. There was no evidence of Ruth's involvement except that Ruth signed a document entitled "acknowledgment," stating that she admitted that she took "from the possession of the Company, without making payment, without the permission of the Company, the following property of the Company: 1 pantyhose."

Ruth testified that she signed the document only because they would not let her call her mother unless she signed it, and that the security guard told her that she was not admitting guilt by so doing. Cates signed this same form document and another document acknowledging that she had confessed to theft and acknowledging that she might receive a letter requiring restitution to the company.

■ In order for J.C. Penney to prevail, it must show that this evidence could **only** be interpreted in such a way as to provide it with probable cause to believe that Ruth was guilty of the offense. In this review, we look to see if J.C. Penney conclusively proved that a reasonable person would believe that a crime had been committed, given the facts as J.C. Penney honestly and reasonably believed them to be before the criminal proceedings were instituted. *Richey,* 952 S.W.2d at 517. In this case, J.C. Penney could reasonably rely on Ruth's signing of the acknowledgment that admitted participation in the theft.

However, that evidence does not stand alone. The security guard who instituted the prosecution on behalf of J.C. Penney testified that even at the time of the arrest he did not believe that Ruth had stolen anything. Further, the objective evidence shows only that Ruth took all the packages into the dressing room, *that the pantyhose were not visible* while they were both in the dressing room, and that the pantyhose were was ultimately found in Cate's possession. In that situation, even though J.C. Penney might reasonably believe that Ruth had participated in the theft because of her admission, the jury had before it evidence that the "acknowledgment" was obtained only through a form of mental coercion, based upon the girls' testimony that they were not permitted to contact their parents until they signed the form. In addition, the guard stated that he had been instructed to inform detainees that the "acknowledgment" was in part for their own protection—because it ensured that no J.C. Penney employee would later add more allegedly stolen items to the list on the form.

Further, the security guard testified that he did not believe that Ruth stole anything and that he was only sure that one of the girls had the pantyhose. He testified that Cates had picked up the pantyhose, that she was carrying the bags, and that the pantyhose were found in one of Cates's bags. As shown by the undisputed evidence, when

they were stopped, the pantyhose were in Cates's possession. As an employee of J.C. Penney, the security guard's knowledge was necessarily imputed to J.C. Penney. In addition, Cates signed the second "Texas–Civil Demand Notice" form discussed earlier in which she agreed that she had admitted to stealing the item.

Even if we disregarded these factors, however, the evidence also shows that the prosecution was re-instituted against Ruth only—after it had been dismissed—but that Cates (the possessor of the stolen merchandise) was not prosecuted for her alleged crime. This is also some evidence from which a jury might conclude that the prosecution was not brought because J.C. Penney believed that Ruth was guilty of the offense, but for some other reason. Thus, this no-evidence contention fails.

 J.C. Penney also contends that the evidence conclusively shows that it did not act with malice. Malice is defined as ill will, evil motive, or gross indifference or reckless disregard of the rights of others, and may be established by direct or circumstantial evidence. *Apache Corp. v. McLean,* 857 S.W.2d 683, 690 (Tex.App.—Houston [14th Dist.] 1993, no writ); *see Fisher v. Beach,* 671 S.W.2d 63, 67 (Tex.App.—Dallas 1984, no writ); *Dahl v. Akin,* 645 S.W.2d 506, 515 (Tex.App.—Amarillo 1982), *aff'd,* 661 S.W.2d 917 (Tex.1983). A plaintiff is not required to prove that the defendant acted with personal spite but instead that the defendant committed wrongful acts in reckless disregard of another's rights and with indifference as to whether that party would be injured. *Reed v. Lindley,* 240 S.W. 348, 351 (Tex.Civ.App.—Fort Worth 1922, no writ). Further, Texas courts have long held that the jury may infer malice from the proof of lack of probable cause. *Biering v. First Nat'l Bank,* 69 Tex. 599, 7 S.W. 90, 92 (1888); *Apache Corp.,* 857 S.W.2d at 690; *Diamond Shamrock Corp. v. Ortiz,* 753 S.W.2d 238, 241 (Tex.App.—Corpus Christi 1988, writ denied).

We have previously discussed the evidence of probable cause, or the lack thereof. In addition, the guard testified that he had told Ruth and Cates that signing the form was for

their protection, but other agents of J.C. Penney stated by deposition that the real reason for having the girls sign the acknowledgment was to avoid civil liability. Indeed, as previously noted, the security guard, acting on behalf of J.C. Penney, testified that he did not believe that Ruth stole anything.

The timing of the second prosecution also raises serious questions about the purpose of the prosecution. On March 22, 1995, the first prosecution ended when the complainant failed to show for trial, and the State moved for a dismissal. Ruth filed suit against J.C. Penney on June 2, 1995. Two months later, J.C. Penney filed another complaint against Ruth, on August 23, 1995, but J.C. Penney again failed to appear at trial, and the prosecution was dismissed for a second time. Further, the prosecution against Cates, the individual who actually possessed the property, had been dismissed also but was not refiled.

It would be possible for a jury to draw the conclusion that the only reason the second complaint was filed was an effort to improve the company's legal position in Ruth's civil suit, rather than the proper purpose of bringing an offender to justice.

Based upon these factors, we conclude that there is some evidence that the jury could have taken as proof of malice. Accordingly, the trial court did not err by denying the motion for a directed verdict and the motion for j.n.o.v. Because of our conclusion on this issue, we need not address the conditional cross-point of error raised by Ruth.

The judgment is affirmed.