# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00169-CV

**Evans P. Weaver, Appellant**

**v.**

**Nicole Bell, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT
## NO. GN-304677, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Evans P. Weaver appeals from the trial court's granting of summary judgment in favor of appellee Nicole Bell in his suit filed after a dispute arose related to Weaver's work on a remodeling project at Bell's home. Weaver complains on appeal that the trial court erred in granting summary judgment for Bell because: (1) Bell's motion addressed only one of Weaver's causes of action; (2) Bell did not show her entitlement to judgment as a matter of law and issues of material fact exist; and (3) Weaver did not have adequate time to conduct discovery before summary judgment was granted. We affirm the trial court's judgment.

## Factual Background

According to Weaver's recitation of the underlying facts set out in his petition, in August 2001, Weaver's neighbor, Jason Near, asked if Weaver would do some construction work

on a house owned by Near's girlfriend, Nicole Bell. Weaver agreed and entered into a contract with Bell for the remodeling project, which was to include interior and exterior repair and construction work.[1] Shortly after Weaver began work, Bell's neighbors complained to the City of Austin, concerned about an old tree in Bell's front yard, resulting in a delay while permits were obtained. In September, about a month after the contract was signed, disputes began to arise related to payment under the contract. On October 3, 2001, Bell and Weaver signed an amendment to the contract under which Bell was to pay Weaver almost $17,000 and Weaver was to complete his work on Bell's house by October 15. On October 5, the City issued a permit under which Weaver was allowed to construct the contemplated driveway. On October 11, Bell sued Weaver, alleging that he had not completed work as contemplated by the October 3 amendment.[2] Bell also alleged problems and defects with Weaver's work, including a failure to seal cuts on trimmed trees.

On December 7, Weaver met his subcontractor, Tony Rangel, at Bell's residence to inspect the trees and seal any exposed cuts. When Weaver arrived, five or six men, employees of the company Bell hired to complete the project, were working on the driveway. Weaver believed that the men were cutting the roots of the old tree specifically protected by the permit issued in Weaver's name. Concerned that he would be held responsible for any damage to the tree, Weaver called the City. While waiting for the City's inspector to arrive, Weaver took pictures of the workers and the work site. When the inspector arrived, he and Weaver walked around Bell's property

---

[1] Bell told the police that Weaver never had permission or reason to enter her house. Weaver asserts that the original agreement contemplated that he would be doing interior work and that Bell gave him a house key so he could do interior work when she was not home.

[2] Bell's lawsuit against Weaver is unrelated to this appeal.

together. Weaver asserted that he left before the inspector, who stayed behind and issued a stop-work citation, and that he did not enter Bell's home.

On the afternoon of December 7, Bell contacted the Austin Police Department to report that Weaver had come onto her property without her permission. In an affidavit provided to Detective Christopher Harkins on December 19, Bell stated that on December 7 she was called at work by Chris Mele, owner of the construction company hired to finish the job started by Weaver. Mele told her that Eladio Mendoza, foreman of the project, had reported that a man was in Bell's yard yelling and taking photographs. Mele called back later and "said that it was Mr. Weaver that was on [Bell's] property." Bell averred that she spoke to Mendoza, who said Weaver had been in Bell's front and back yards and had briefly entered her home. Bell stated that she had revoked Weaver's permission to enter onto her property and communicated that fact through her attorney and to Rangel at least as early as October 16 and that he had never had permission to enter her house. She further averred that Weaver had been instructed to contact Bell only through her attorney.

Harkins spoke to Bell and Mendoza and on January 3, 2002, executed an affidavit and obtained a warrant for Weaver's arrest for criminal trespass. However, Bell later wrote a letter to the county attorney stating that she did not wish to punish Weaver and only made her report because she was concerned about her safety. In June 2002, the charges were dismissed.

On June 17, 2003, Weaver sued Bell, Near, Harkins, the City of Austin, Mendoza, and several other defendants, asserting claims for malicious prosecution, defamation, false imprisonment, and false arrest. Bell moved for summary judgment on August 14, asserting that Weaver would be unable to show that Bell acted with malice or without probable cause, that she

3

procured the criminal proceeding, that the criminal proceeding terminated in Weaver's favor, or that he was innocent. Weaver filed a motion for continuance on September 2, stating that his recently retained attorney needed time to become familiar with the case and that there had not been adequate time for discovery; the trial court denied Weaver's motion for continuance. Weaver filed a response to Bell's motion on September 3, but the trial court granted Bell's motion on September 10 and in December severed the claims against her into a separate cause number and rendered a final judgment in Bell's favor.

### Did Bell Establish Her Right to Summary Judgment?

In his fourth, fifth, sixth, seventh, and eighth issues,[3] Weaver asserts that fact questions remained as to whether: Bell established probable cause, procured the prosecution, and acted with malice; the prosecution terminated in Weaver's favor; and Weaver established his innocence. If Bell disproved as a matter of law any one element of Weaver's malicious prosecution claim, summary judgment was properly granted as to that cause of action.

### *Standard of Review*

A defendant seeking summary judgment must negate as a matter of law at least one element of each of the plaintiff's theories of recovery or plead and prove as a matter of law each element of an affirmative defense. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995).

---

[3] Weaver structures his brief to advance only one "issue" on appeal—whether the trial court erred in granting summary judgment in Bell's favor. He then sets out eight "sub-issues," attacking the summary judgment on different grounds. For clarity, we will refer to the "sub-issues" as if they were eight independent issues on appeal.

4

In reviewing the grant of summary judgment, we view the evidence in the light most favorable to the nonmovant, disregarding contrary inferences and resolving all doubts in the nonmovant's favor. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003); *Centeq Realty*, 899 S.W.2d at 197. Summary judgment may only be based on an interested witness's affidavit if it is clear, positive, direct, credible, free from contradiction, uncontroverted, and susceptible to being controverted. Tex. R. Civ. P. 166a(c); *Trico Techs. Corp. v. Montiel*, 949 S.W.2d 308, 310 (Tex. 1997).

Malicious prosecution actions are disfavored by the law because they tend to have a chilling effect on the reporting of possible crimes. *Smith v. Sneed*, 938 S.W.2d 181, 183 (Tex. App.—Austin 1997, no writ). "What is distinctive about malicious prosecution is that there is little room for error in applying the law. Even a small departure from the exact prerequisites for liability may threaten the delicate balance between protecting against wrongful prosecution and encouraging reporting of criminal conduct." *Browning-Ferris Indus., Inc. v. Lieck*, 881 S.W.2d 288, 291 (Tex. 1994). To prevail on a malicious prosecution action, a plaintiff must show that the defendant caused the commencement of a criminal prosecution against the plaintiff, the defendant lacked probable cause and acted with malice, the prosecution terminated in the plaintiff's favor, and the plaintiff was innocent of the charge and suffered damages as a result. *Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 517 (Tex. 1997). Criminal trespass, the charge for which Weaver was arrested, occurs when someone enters onto property without the owner's consent, knowing that his entry is forbidden. Tex. Pen. Code Ann. § 30.05(a) (West Supp. 2004-05).

*Summary Judgment Evidence*

Bell's motion for summary judgment urged that she did not lack probable cause, act with malice, or procure the criminal proceedings. Bell attached as evidence her affidavit prepared in support of her motion; the affidavit she provided to the police on December 19; the undated letter she wrote to the Travis County Attorney's Office, in which she stated that she did not wish to press charges and only made her report out of concern for her safety; Weaver's petition; Mendoza's deposition; and the October 3 amendment to the construction contract.

In her police affidavit, Bell averred that Weaver never had permission or cause to go into her house. She further stated that although she had earlier revoked permission for Weaver to enter onto her property, Mele called her at work on December 7 and informed her that workers at her house had seen Weaver come onto her property and briefly go into her house.[4] Bell went home after getting Mele's calls, but Weaver had already left. Bell spoke to Rangel, telling him that he and Weaver had trespassed on her property, and Rangel apologized and said he was only following Weaver's instructions. Bell averred that Weaver had vowed to make her life difficult and that she feared for her safety. In her summary judgment affidavit, Bell averred that after being told that Weaver had been at her house, she contacted her attorney, who advised her to call the police.

Weaver filed a response, attaching as evidence an affidavit in which he stated that Bell procured the criminal proceedings, lacked probable cause, and acted with malice and with reckless disregard for his rights and that he was innocent of the charges. He also attached as

---

[4] Bell further averred that in mid-October Weaver or one of his employees had come onto her property and stolen materials.

evidence excerpts from the depositions of Bell, Mendoza, the city inspector, and Jeff Ransom, who was working inside Bell's house on December 7.

The inspector stated that he was at Bell's residence for about thirty minutes and that Weaver left shortly before the inspection was finished. The inspector did not see Weaver go into Bell's house and did not believe Weaver returned to the scene after the inspector left. In Mendoza's deposition, he said he saw a man taking pictures on December 7 and that the same man entered Bell's house briefly. Mendoza had not seen the man since and did not think he would recognize the man if he saw him again, but when asked stated that Weaver, who was present at the deposition, was not the man he saw. Ransom testified that on December 7 a man he did not know came through Bell's house. When Bell asked that same day if he had seen anyone in the house, he told her he had. Ransom said that "[l]ater on" Bell asked Ransom to describe the man and then said it sounded like one of her friends; Ransom did not state how long after their initial conversation Bell asked him to describe the man who entered the house. Ransom did not hear any yelling, but explained that he was working in the back of the house and could not hear what was happening outside. Finally, Weaver attached a page from Bell's deposition, in which she was asked what Ransom told her he had seen. Bell answered, "I asked him if he heard anyone in the front, back, inside the house, outside the house. He said he did not see anyone in—well, he didn't hear anyone yelling out front." When she spoke to Ransom immediately after she got the call at work and came home, he told her he had not seen anyone. At the end of the day, Bell spoke to Ransom again, who said that since their first conversation, a man about six feet tall with dark hair had come through the house. Weaver averred that he does not match Ransom's description of the man he saw in the house.

*Probable Cause*

In his fourth issue, Weaver argues that the trial court could not have found that Bell showed she had probable cause for her police report.

In a malicious prosecution suit, the probable cause inquiry is very narrow and asks only whether a reasonable person would believe that an offense had been committed, given the facts as the defendant honestly and reasonably believed them to be. *Forbes v. Lanzl*, 9 S.W.3d 895, 899 (Tex. App.—Austin 2000, pet. denied) (citing *Richey*, 952 S.W.2d at 519). The defendant need not have inquired as to whether the plaintiff had some explanation for his actions before reporting the believed offense. *First Valley Bank of Los Fresnos v. Martin*, 144 S.W.3d 466, 470 (Tex. 2004) ("When the objective elements of a crime reasonably appear to have been completed, a private citizen has no duty to inquire whether the suspect has some alibi or explanation before filing charges."); *Forbes*, 9 S.W.3d at 899. Even if a defendant withholds some evidence in making her report, such withholding does not defeat her probable cause but instead goes to the issue of malice. *Martin*, 144 S.W.3d at 470; *Forbes*, 9 S.W.3d at 899.

Bell averred that she informed Weaver through at least two sources that he was not permitted on her property. She further averred that she was told by the new construction company that Weaver had come onto her property[5] and in fact entered her house. Those two facts, if true, mean that Weaver committed trespass on December 7. *See* Tex. Pen. Code Ann. § 30.05(a).

Although Weaver stated in his petition that he did not enter Bell's house and that his permission to come onto Bell's property had not been revoked, pleadings are not summary judgment

---

[5] Weaver admits that he entered onto Bell's property, denying only that he entered the house.

proof. *Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 660-61 (Tex. 1995) ("Generally, pleadings are not competent evidence, even if sworn or verified."); *Hidalgo v. Surety Sav. & Loan Ass'n*, 462 S.W.2d 540, 543-45 (Tex. 1971) (discussing whether sworn pleadings may be considered summary judgment proof and holding "that orderly judicial administration will be better served in the long run if we refuse to regard pleadings, even if sworn, as summary judgment evidence"); *Reynosa v. Bexar County Hosp. Dist.*, 943 S.W.2d 74, 76 (Tex. App.—San Antonio 1997, writ denied); *Robbins v. HNG Oil Co.*, 878 S.W.2d 351, 354 (Tex. App.—Beaumont 1994, writ dism'd w.o.j.). Weaver stated in his affidavit, "I was innocent of the charges," and asserted that Bell lacked probable cause and acted with malice, but did not support those assertions with statements of fact. Such conclusory statements are not proper summary judgment evidence. *See Texas Div.-Tranter, Inc. v. Carrozza*, 876 S.W.2d 312, 314 (Tex. 1994). Weaver admits that he was on Bell's property on December 7. He focuses only on whether he went into the house, pointing to the deposition excerpts that he argues show that at the time she made her statement to the police, she knew it was not he who entered the house.

We note that Bell did not aver to the police that she had actual knowledge of Weaver's entry onto her property, but instead related only what she was told by those present at the time. It was only after additional investigation that Harkin decided to swear out an affidavit asserting that Weaver had committed trespass. It is undisputed that Weaver entered onto Bell's property on December 7, and in his affidavit, Weaver did not deny that Bell had revoked her permission for him to be on her property; in fact, he did not even deny entering her home, although that is implied by his assertion that he was innocent of the charges. Further, the deposition excerpts do not show that

9

at the time Bell made her statement to the police she knew or believed that Weaver had not gone into her house. At the time of his deposition, Mendoza did not believe it was Weaver he had seen,[6] and Ransom "later" described someone who Bell believed was a friend. However, Weaver's evidence does not show that Bell had that information at the time she made her report, nor does it contradict Bell's evidence that she had earlier revoked Weaver's right to enter onto her property. Thus, Bell established as a matter of law that she had probable cause to make her report to the police.

Even if we were to consider Weaver's pleadings as proof and assume that Weaver's right to enter onto Bell's property had not been explicitly revoked and that Bell initially gave him permission to enter into the house when necessary for interior work, nothing in Weaver's recitation of the events of the day would require him to enter into Bell's house. Bell did not state that she knew Weaver had in fact entered the house, only that she had been told he had. Although Weaver points to inconsistencies and a possible language barrier related to Mendoza's involvement in the incident,[7] Weaver did not rebut that Bell believed or had cause to believe he had entered her home when she made her report.

---

[6] Weaver argues that Mendoza's deposition testimony proves that it was not Weaver seen entering Bell's house. However, Mendoza said that the same man he saw taking pictures of the construction work went into the house, and Weaver admits to being at Bell's house and taking pictures. Although Mendoza said Weaver was not the man he saw, he also said he did not think he would recognize the man if he saw him again.

[7] Weaver argues that a language barrier may have been an issue when Mendoza was interviewed by the police. However, such inconsistencies or uncertainties do not have bearing on Bell's beliefs at the time she called the police. Bell averred that she was told that Weaver had come onto her property and entered her home, despite being told to stay away from her property. Whether it was certain that Weaver was the man described by Mendoza or whether Weaver actually entered the house makes no difference as to Bell's state of mind.

Bell established as a matter of law that she had probable cause to make her report to the police, and Weaver did not produce any evidence to raise a fact issue as to probable cause. We overrule Weaver's fourth issue.

*Procurement of the Criminal Proceedings*

In his fifth issue, Weaver argues the trial court erred if it granted summary judgment on the ground that Bell did not procure the criminal proceeding.

"Procurement" in a malicious prosecution suit means more than simply providing false information to law enforcement authorities. *King v. Graham*, 126 S.W.3d 75, 78 (Tex. 2003). In a case where the defendant did not make the decision to prosecute, the plaintiff must show that the defendant knowingly provided false information *and* that the decision to prosecute would not have been made without the false information. *Id*.

Harkins investigated the incident and decided to swear out a warrant. Bell argued that because she merely made a report to the police, she did not procure the criminal proceeding. Bell told the police that Weaver did not have her permission to be on her property and that she had been told he had come onto her property, which Weaver admits, and entered her house; she did not assert personal knowledge that Weaver had in fact entered the house.

We must read the procurement requirement narrowly, cleaving to "the exact prerequisites for liability." *Lieck*, 881 S.W.2d at 291. The evidence shows that the police investigated and interviewed other witnesses before deciding to arrest Weaver and that the decision was not based solely on Bell's statement to the police. Weaver did not produce evidence raising a fact question as to whether Bell gave false testimony to the police. Further, Bell did not purport to

11

have actual knowledge as to all of the elements of trespass. She merely relayed what she was told about Weaver's presence on her property and averred that Weaver lacked permission to be on her property. Therefore, we hold that Bell showed she did not procure the prosecution and Weaver did not rebut that showing. We overrule Weaver's fifth issue.

*Malice*

In his sixth issue, Weaver argues that the trial court could not properly have granted summary judgment based on the ground that Bell did not act with malice.

"Malice" is ill will, evil motive, or gross indifference or reckless disregard of another's rights. *J.C. Penney Co. v. Ruth*, 982 S.W.2d 586, 590 (Tex. App.—Texarkana 1998, no pet.). A showing of personal spite is not required; malice may be found if the defendant acted wrongfully in reckless disregard of the plaintiff's rights and with indifference as to whether the plaintiff would be harmed. *Id*. Malice may be shown by circumstantial or direct evidence and may be inferred from a defendant's lack of probable cause. *Id*.

Bell averred that she was told that Weaver was on her property, "yelling and screaming" and taking photographs. In her summary judgment affidavit, she stated that she contacted her attorney, who advised her to call the police. In her affidavit to the police, Bell stated that Weaver had been told not to contact her except through her attorney and not to come onto her property. She said Weaver had vowed to make her life difficult and that he "invaded [her] privacy and sense of safety." Bell averred, "I personally fear for my safety, and the intent that Mr. Weaver may have."

12

Bell swore that Weaver had been told not to come onto her property, and the relationship between Weaver and Bell had deteriorated to the point that they were embroiled in a lawsuit against each other. Weaver did not produce evidence contradicting Bell's averments that he had been told not to come onto her property. Furthermore, Bell did not tell the police that she knew firsthand that Weaver had entered her house; she told them that she had been informed that Weaver was on her property and had entered her home. Bell established that she believed that Weaver had notice that his entry was forbidden and yet still came onto her property and perhaps entered into her house and that she was alarmed and concerned for her safety. This is evidence that she acted without malice, and Weaver produced no evidence raising a fact issue as to whether Bell acted maliciously in making the report. We overrule Weaver's sixth issue.[8]

### Propriety of Bell's Motion for Summary Judgment

In his second issue, Weaver asserts that the trial court could not have properly granted Bell's motion on three of her five grounds, which asserted that Weaver "fail[ed] to establish" certain elements of malicious prosecution. This, he argues, improperly attempted to shift the burden to Weaver or were premature "no-evidence" grounds. In his third issue, Weaver asserts that if Bell's motion is considered a "no-evidence" motion for summary judgment, the trial court erred in granting the motion because Weaver did not have adequate time to conduct discovery, as required by rule 166a(I) of the rules of civil procedure.

---

[8] Having held that Bell established her right to summary judgment by disproving not only one but three elements of malicious prosecution, we need not decide Weaver's seventh and eighth issues related to innocence and termination of the criminal proceedings in his favor.

In her motion for summary judgment, Bell argued that Weaver could not establish that she acted with malice or lacked probable cause in making her report to the police, noting a general presumption that a person acts with probable cause in making police reports. *Richey*, 952 S.W.2d at 517. She further argued that she did not procure the criminal proceedings. Although the language of Bell's arguments related to malice and probable cause rings of a no-evidence motion for summary judgment, *see* Tex. R. Civ. P. 166a(I), Bell attached evidence in the form of her affidavit and other documents and pointed to that evidence to support her arguments. As we have discussed, Bell established her entitlement to summary judgment through her evidence,[9] and thus there was no improper shifting of the evidentiary burden, nor need we examine whether adequate time for discovery had passed so as to make a no-evidence motion appropriate. A traditional motion for summary judgment may be filed at any time, without the need to allow adequate time for discovery. Tex. R. Civ. P. 166a(b). We overrule Weaver's second and third issues.

### Did the Trial Court Grant More Relief Than Was Requested?

In his first issue on appeal, Weaver argues that the trial court erred in granting summary judgment for Bell because her motion only addressed malicious prosecution, and not his

---

[9] *See Carr v. Mobile Video Tapes, Inc.*, 893 S.W.2d 613, 618 (Tex. App.—Corpus Christi 1994, no writ) ("We agree with the Carrs that their affidavits controvert certain facts from Stout's affidavit and complaint. But the Carrs have failed to controvert evidence that Stout acted on his actual and reasonable belief when he filed the cruelty-to-animals complaint against Carr."); *Closs v. Goose Creek Consol. Indep. Sch. Dist.*, 874 S.W.2d 859, 877-78 (Tex. App.—Texarkana 1994, no writ) (defendant's affidavit established that he turned over all information gathered to district attorney, and summary judgment evidence established that reasonable person could have believed plaintiff committed crimes). In this case, Weaver did not rebut Bell's evidence that she acted with probable cause and without malice in reporting the facts as they were related to her.

14

remaining three causes of action. Bell responds that Weaver sued her only for malicious prosecution and that she could not have committed false arrest or false imprisonment because it was the police, not she, who arrested and detained Weaver.

In his petition, Weaver sets out the facts underlying his suit at length. He then states in section "(1.) As to Bell" of the "Causes of Action" portion of his petition that Bell initiated and procured the criminal proceedings against him. Weaver states that Bell was the cause in fact of the criminal charges, that the proceedings terminated in his favor, that he was innocent of the charges, and that Bell lacked probable cause and acted with malice and with reckless disregard to Weaver's rights, resulting in harm to Weaver. Weaver goes on to set out similar allegations and to recite the elements of malicious prosecution "[a]s to Near," Harkins, the Austin Police Department, and the other defendants. In four lines at the conclusion of the "Causes of Action" portion of his petition, Weaver states that he was "falsely arrested and charged with Criminal Trespass" and "detained for a false reason," and then lists false imprisonment, defamation, and malicious prosecution.

In her motion for summary judgment, Bell addressed the elements of malicious prosecution, closing by asking that Weaver's claims against her be dismissed. In Weaver's pleadings and responses, he discussed only the elements of malicious prosecution and only alleged facts supporting that claim. In his response to Bell's motion for summary judgment, Weaver stated that he "sued defendant Nicole Bell for Malicious Prosecution." After the trial court granted her motion for summary judgment, Bell filed a motion to sever the claims against her into a separate cause. Bell recited that she had prepared and circulated a proposed agreed severance and final judgment to Weaver and argued that severance was proper because Bell had "obtained a Summary Judgment

15

against [Weaver] on all of [Weaver's] claims against [her]." In his objection to the motion to sever, Weaver did not mention any other causes of action, stating instead that the cause "is a suit for Malicious Prosecution" and that "[t]he controversy does not involve more than one cause of action." Nowhere in his trial court pleadings did Weaver complain that Bell's motion failed to address other claims raised against her.

The general rule is that a trial court may not grant more relief than is requested by a motion for summary judgment. *Chessher v. Southwestern Bell Tel. Co.*, 658 S.W.2d 563, 564 (Tex. 1983). Under these particular facts, we hold it was not error for the trial court to dismiss Bell from the lawsuit. Weaver's pleadings only allege facts related to malicious prosecution in the subsection titled, "As to Bell." Weaver did not allege that Bell in any way detained him or restricted his movement, and thus she could not be guilty of false imprisonment or false arrest.[10] *See Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995) (elements of false imprisonment); *City of San Antonio v. Dunn*, 796 S.W.2d 258, 262 (Tex. App.—San Antonio 1990, writ denied) (elements of false arrest). On appeal, Weaver states that Bell "might have committed defamation" by her police affidavit because she averred that Weaver had stolen materials from her property, but he never referred to that statement or other possible defamation at the trial court level. Weaver also states that his intention to plead all four causes of action against all the defendants, including Bell, "is clear when one looks at the structure of the petition," outlining the numbering system used in his

---

[10] False imprisonment and false arrest are essentially the same cause of action and require a showing of: (1) willful detention; (2) without consent; and (3) without authority of law. *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995) (false imprisonment); *City of San Antonio v. Dunn*, 796 S.W.2d 258, 262 (Tex. App.—San Antonio 1990, writ denied) (false arrest).

petitions. When outlined as Weaver has done on appeal, the other three causes of action are easier to trace. However, Weaver's outline condenses eighteen pages, all related to the elements of malicious prosecution, into fourteen lines. Bell sought dismissal of Weaver's *claims* against her, although her argument, like Weaver's, addressed only malicious prosecution. Bell moved to have the claims against her severed and a final judgment rendered, providing Weaver with a proposed final judgment before filing her motion. Weaver never complained that he had other claims pending against Bell, and in fact stated only that he was suing her for malicious prosecution.

Bell disputed and the trial court properly dismissed the claim Weaver leveled against her—malicious prosecution. Bell sought dismissal of all claims against her, and Weaver did not produce any evidence to raise a fact issue as to any other theories. We overrule Weaver's first issue.

## Conclusion

Having overruled Weaver's issues on appeal, we affirm the trial court's judgment.

_____

David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear: Opinion by Justice Puryear;
    Dissenting Opinion by Justice Patterson

Affirmed

Filed: June 10, 2005